# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
03/19/2009
CT Log Number 514601560

|||||||||||||||||||||||||||||||||||||||||||||||||

TO: ALBERT S. ROSE
Lewis, Rice & Fingersh, L.C.
500 North Broadway, Suite 2000
Saint Louis, MO 63102-2147

RE: **Process Served in Michigan**

FOR: Openmarket Inc. (Domestic State: MI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Kiril Gantchev and Margaret Ryan, individually and on behalf of a class of similarly situated individuals, Pltfs. vs. Predicto Mobile, LLC, etc., et al. including Openmarket, Inc., etc., Dfts.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Amended Complaint |
| **COURT/AGENCY:** | Circuit Court of Cook County - Chancery Division, Cook County, IL<br>Case # 08CH31842 |
| **NATURE OF ACTION:** | Class Action Complaint pertaining to unlawful practice of charging telephone customers for products and services the consumers have not authorized such as unauthorized premium content charges with wrongful collection of money - Seeking to enjoin Dft. OpenMarket Inc., from continuing its illegal practices |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Bingham Farms, MI |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/19/2009 at 13:55 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | Myles McGuire<br>KamberEdelson LLC<br>350 North LaSalle Street, Suite 1300<br>Chicago, IL 60654<br>312-589-6370 |
| **ACTION ITEMS:** | Telephone, ALBERT S. ROSE , 314-444-1300<br>*Spoke to Albert S. Rose regarding the seeking to enjoin Dfts.*<br>SOP Papers with Transmittal, via Fed Ex 2 Day , 790657539441 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | The Corporation Company<br>Stephanie Hendrickson<br>30600 Telegraph Road<br>Suite 2345<br>Bingham Farms, MI 48025-5720 |
| **TELEPHONE:** | 248-646-9033 |

Page 1 of  1 / JG

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(8/01/08) CC(

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____ CHANCERY _____ DIVISION

No. 08 CH 31842

KIRIL GANTCHEV and MARGARET RYAN

(Name all parties)

v.

PREDICTO MOBILE, LLC, et al.

Hon. James R. Epstein

## SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of w hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Cour following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___ 802 ___, Chicago, Illinois 60602

☐ District 2 - Skokie
 5600 Old Orchard Rd.
 Skokie, IL 60077

☐ District 3 - Rolling Meadows
 2121 Euclid
 Rolling Meadows, IL 60008

☐ District 4 - Maywood
 1500 Maybrook Ave.
 Maywood, IL 60153

☐ District 5 - Bridgeview
 10220 S. 76th Ave.
 Bridgeview, IL 60455

☐ District 6 - Markham
 16501 S. Kedzie Pkwy.
 Markham, IL 60426

☐ Child Support
 28 North Clark St., Room 20(
 Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE R REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endor of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so en This Summons may not be served later than 30 days after its date.

MAR 0 9 2009

Atty. No.: 44146

Name: Myles McGuire

Atty. for: Plaintiffs

Address: 350 North LaSalle Street, Suite 1300

City/State/Zip: Chicago, Illinois 60654

Telephone: (312) 589-6370

WITNESS,

_____
Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with de or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| KIRIL GANTCHEV AND MARGARET RYAN, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. 08 CH 31842 |
| v. | ) ) ) | |
| PREDICTO MOBILE, LLC, a Delaware limited liability company, NEXTWEB MEDIA, LLC, a Nevada limited liability company, EMAIL DISCOUNTS, LLC, a Nevada limited liability company, OPENMARKET, INC., a Michigan corporation, ENHANCED BILLING SERVICES, INC., a Delaware Corporation, | ) ) ) ) ) ) ) ) | The Hon. J. Epstein |
| *Defendants.* | ) ) ) | **Jury Trial Demanded** |

## AMENDED[1] CLASS ACTION COMPLAINT

Plaintiffs Kiril Gantchev and Margaret Ryan bring this amended class action complaint

against Defendants NextWeb Media, LLC, its subsidiaries Predicto Mobile, LLC and Email

Discounts, LLC, and aggregators OpenMarket, Inc. and Enhanced Billing Services, Inc., seeking

to stop Defendants' unlawful practice of charging telephone consumers for products and services

the consumers have not authorized, a practice which has resulted in Defendants unlawfully

collecting money from consumers throughout the State of Illinois, and to obtain redress for all

persons injured by such conduct. Plaintiffs, for their class action complaint, allege as follows

---

[1] On November 6, 2008, Plaintiff Gantchev filed a corrected class action complaint against
defendant Predicto Mobile, LLC.

1

upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1. Plaintiff Kiril Gantchev is a resident of Illinois.

2. Plaintiff Margaret Ryan is a resident of Illinois.

3. NextWeb Media, LLC ("NextWeb") is a provider of telephonic services known as "premium content" that it markets to both cellular and landline telephone consumers through numerous subsidiaries and/or other affiliates, such as codefendants Predicto Mobile, LLC and Email Discounts, LLC. NextWeb is a Nevada limited liability company with its headquarters and principal place of business in New York. It does business throughout the State of Illinois and in this County.

4. Defendant Predicto Mobile, LLC ("Predicto") is a provider of premium content to cellular telephones in the United States. It is a Delaware limited liability company nominally headquartered in New Jersey.

5. Defendant Email Discounts, LLC ("Email Discounts") is a provider of premium content to landline telephones in the United States. It is a Nevada limited liability company headquartered in New York. Defendants Predicto and Email Discounts are owned, operated and controlled by Defendant NextWeb.

6. Defendant OpenMarket, Inc. ("OpenMarket") is a billing processor, or "aggregator," that bills cellular telephone consumers for premium content services provided by third-parties such as Defendants NextWeb and Predicto. Premium content for cellular telephones consists of, among other things, ringtones, games, graphics, horoscopes, news, and other products and services. OpenMarket is a Michigan corporation with its headquarters and

2

principal place of business in the State of Washington. It does business throughout the State of

Illinois and in this County.

7.     Enhanced Business Services, Inc., ("ESBI") is a billing processor, or

"aggregator," that bills landline telephone consumers for premium content services provided by

third-parties such as Defendants NextWeb and Emails Discounts. Premium content for landline

telephones consists of, among other things, games, horoscopes, coupons, dieting tips, fax

services, business advice, and other products and services. ESBI is a Delaware corporation with

its headquarters and principal place of business in the State of Texas. It does business

throughout the State of Illinois and in this County.

VENUE

8.     Venue is proper in Cook County because Defendants do business in Cook

County.

CONDUCT COMPLAINED OF

9.     Today's telephones are far more complex instruments than the traditional

landline-based telephones of the past. Instead of mere tools for sending and receiving calls,

modern telephones - both landlines and mobile phones - have increasingly been used by

consumers to transact commerce with third parties, in some ways like a common credit card.

Such ability permits telephone subscribers to purchase a vast variety of products or services

provided by a rapidly growing industry of third-party vendors such as Defendant NextWeb and

its subsidiaries. These additional products and services are collectively referred to in the

telecommunications industry as "premium content."

10.     For cellular telephone subscribers, premium content ranges from weather alerts to

traffic reports and sports scores to Defendant Predicto's self-described "phone games," which,

3

according to Predicto's website, "lets you vote on fun questions from your cell phone" for which "$9.99 will be charged monthly to your mobile phone bill."

11.     For landline telephone subscribers, premium content includes web hosting products, diet monitoring services, email accounts such as Defendant Email Discounts's services which, according to a NextWeb website, purports to offer an "exclusive access . . . email service [where] you get $1000.00 in online coupons plus Cash-Back on every purchase you make - for just $14.95/mo."

12.     Many premium content third-party vendors, such as NextWeb, do not distinguish between mobile and landline premium content other than in marketing materials. These third-party vendors elect instead, for cost efficiency purposes, to consolidate and streamline into a single operation the creation and billing of such products and services. Despite the existence of such a centralized operation, NextWeb maintains the appearance of disparate and unrelated activities through numerous subsidiaries and other affiliates, such as Defendants Predicto and Email Discounts, so as to conceal from both the public and government agencies the breadth of its fraudulent and/or otherwise unlawful conduct described herein.

13.     Indeed, NextWeb is one of a plethora of companies that create premium content and market it to both landline and cell phone consumers under the names of small, nominally independent shell corporations such as Predicto and Email Discounts, as well as others with names such as Residential Email, LLC, Voicemail Direct USA, LLC and Email Discount Network, LLC, all of which are controlled by the same owners as NextWeb.

14.     While companies such as NextWeb and its subsidiaries create and often market premium content themselves, telephone subscribers are not billed directly by these premium content providers. Instead, premium content providers like NextWeb partner with middlemen

4

known as "aggregators," such as OpenMarket for cell phone premium content and ESBI for landline premium content. These aggregators provide a conduit between the numerous, diverse and comparatively small premium content providers and the large telephone carriers, such as AT&T, in order to facilitate the premium content providers' ability to: (i) use a carrier's network to deliver their services to that carrier's subscribers; and/or (ii) use a carrier's billing system to collect payment for their premium content services from that carrier's subscribers. In return, the aggregators and the carriers each receive and retain a percentage of the premium content charges.

15.    The rapid and largely unplanned growth of the premium content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw—understood, perpetuated, and even encouraged by aggregators, content providers, carriers, affiliate marketers, and other industry actors such as instant Defendants—is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established and utilized by companies, including the instant Defendants, in aid of and enriching the premium content industry are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

16.    The premium content industry generates vast revenue for all parties involved: the premium content providers, including Defendant NextWeb and its subsidiaries, aggregators such as OpenMarket and EBSI, and the telephone carriers. However, much of this revenue has been illegitimately and unlawfully collected. The primary sources of the problem are the misleading marketing representations made by unscrupulous premium content providers such as Defendant NextWeb and its agents, as well as the lack of commercial viability of many of Defendants' "services." Indeed, after revealing that it had engaged in fraudulent marketing tactics and that less than five (5) percent of consumers it charged "had ever requested or used" its services,

5

NextWeb subsidiary Email Discount Network LLC settled in 2007 a lawsuit brought against it by the State of Florida Attorney General's Office for charging consumers for unauthorized premium content.

17.    Defendant NextWeb's methods for determining authorization (or lack thereof) continue today to be highly problematic as it contracts on behalf of its subsidiaries with affiliate marketers, such as Celebrity Squares, LLC, among others, who frequently obtain telephone numbers to be charged from little more information than that which is readily available through the public domain, such as one's name or telephone number. By comparison, a consumer who uses a check must sign it to prove he or she authorizes payment. Many merchants also require check-users to show an additional form of identification such as a drivers' license or state-issued ID. An issuing bank then uses that signature to verify whether the consumer actually authorized payment. Similarly, a consumer who uses a credit card must provide, at a minimum, both the credit card number and date of expiration; more often than not a credit card user must also sign a receipt or, if the transaction takes place online, provide his or her three-digit credit card security code, the zip code of the card's billing address and/or a matching street address. Credit card providers have additional levels of security in place that analyze a consumer's particular transaction, based on the transaction's similarity to that consumer's previous transactions, in order to determine how likely a particular transaction may be the result of fraud or theft.

18.    In stark contrast, a premium content provider can cause any consumer to be billed for premium content services once it has that consumer's telephone number, even if the consumer never agreed to purchase its services or was never informed about the charge for such services. Premium content providers such as Defendants NextWeb and Residential Email frequently just have to provide to an aggregator such as ESBI or its parent company, Billing

6

Services Group ("BSG") a cell phone or landline number and an amount to charge, and the aggregator simply relays that information to the carrier to put a charge on the telephone bill that has that number. Indeed, when confronted, many premium content providers attempt to create the appearance that a charge was authorized by producing a "customer's" personal demographic information, such as a street address or mother's maiden name. However, much of this information may be and actually is acquired in bulk through vendors, rather than legitimately from the customers themselves. Despite this, industry participants will frequently feign good-will and offer protesting consumers refunds but almost always in an amount less than what was charged. Indeed, Defendants effectively employ a "charge first, refund later – if at all" approach to business to conceal the scope of their fraudulent activity. Because each of the four parties involved - affiliate marketer, premium content provider, aggregator, and the carrier - keep a portion of every charge, they maintain this system despite knowing that large numbers of people are being billed for services they neither wanted nor authorized.

19.     This problem is exacerbated by the fact that charges for premium content services are often not clearly identified on subscribers' bills, thereby making it difficult if not impossible for subscribers to identify the origin or nature of the charge, or to distinguish it from the numerous other line-item charges and fees that appear on the average consumer's telephone bill. In addition, because charges for premium content services are sometimes just a few dollars, subscribers who have recurring third-party charges may fail to notice such charges, much less anticipate the appearance of such charges on an ordinary cell phone or landline telephone bill.

20.     Put simply, industry participants collectively, including Defendants, have knowingly constructed billing systems with no effective checks to ensure that when they place a charge for premium content placed on a consumer's telephone bill, the billed party actually

7

desired the premium content service and authorized the charge for the service. Instead, Defendants and their agents need only provide a carrier with a subscriber's telephone number in order to place a charge for premium content services on that consumer's bill. The result is that an untold number of Defendants' "customers" have been charged for premium content services they never authorized. Because Defendants profit significantly from this practice, they have done nothing to remedy this flawed billing system. Indeed, they have only redoubled their efforts to further deceive consumers into signing up for such "premium" products and services.

21. Despite Defendants' knowledge of their fraudulent and illegalconduct and their ability to stop their unauthorized billing practices, they have purposefully maintained this system because it is a source of significant profit. However, the damage Defendants have caused to date pales in comparison to the damage which will occur if this system is not fixed given the growth of the premium content services industry, and the increasing opportunities subscribers have to use their telephones as credit cards.

22. Indeed, while the total sales of premium content in Illinois amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones and coupons to mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, to services that enable telephones to function as credit cards. Unchecked, Defendants' practices will injure an ever-increasing number of unwitting consumers.

**The Role of Aggregators OpenMarket and ESBI in the Scheme to Defraud**

23. In order to tap into the emerging premium content marketplace and make content services available to telephone subscribers, content providers such as NextWeb and its subsidiary Defendants Predicto and Residential Email must first obtain access to telephone carriers'

8

communications networks and frequently do so by "partnering" with aggregators—intermediary companies such as OpenMarket and ESBI that offer content providers (their "content provider partners") direct access to the carriers through existing relationships. This allows content providers to focus on developing and marketing branded premium content, applications, and programs while aggregators manage the complex carrier relationships, distribution and billing.

24.     Aggregators operate premium content transaction networks that help companies develop, deliver, and bill for such services to telephones throughout the State of Illinois and indeed the nation. There are two distinct types of aggregators: those that serve the cellular telephone market exclusively, such as OpenMarket, and those that serve the landline telephone market exclusively, such as ESBI. Defendant NextWeb and/or its subsidiaries have contracted with both OpenMarket and ESBI to propagate its fraudulent conduct to the widest possible consumer market. Indeed, an indication of the extent of such fraud throughout both cellular and landline marketed is the extraordinarily high refund rates for premium content charges processed by both aggregators OpenMarket and ESBI.

25.     By using their end-to-end technology platforms, their relationships with U.S. telephone carriers, and other value-added services, OpeMarket and ESBI have forged a crucial link between the carriers and premium content providers. They have enabled the transformation of telephony into a new medium of commerce by providing marketing, content delivery and a collections process, all the while carving out a profitable role for themselves as very critical middlemen in this rapidly growing industry.

26.     Aggregators, including OpenMarket and ESBI have developed a vast distribution system that integrates into the telephone networks of every major landline and cellular telephone carrier nationwide, providing direct connections to the vast majority of landline and cellular

9

telephone consumers nationwide. Aggregator Defendants OpenMarket and ESBI each

respectively have hundreds of content providers customers such as Defendants NextWeb and its

subsidiaries.

27.     While aggregators charge their content provider customers some upfront fees,

their revenue is primarily generated through a "revenue share" on transactions for which they bill

telephone subscribers:  each time a charge is incurred in connection with the purchase of

premium content services, the aggregator and/or the content provider cause said charge to be

billed directly on the telephone bill of the telephone carrier's customer who currently owns

and/or uses the telephone number (claimed to be) associated with such purchase.

28.     The wireless carrier then bills and collects the charge from their current

subscriber, retains a portion of the proceeds as their "revenue share," and remits the balance to

the aggregator who has direct access to their network and who retains a percentage of the balance

in the form of their own "revenue share."  The aggregator then remits the remainder directly to

the content provider (or, in some instances, to another aggregator who retains a percentage of the

balance in the form of their own "revenue share" and remits the balance to their content provider

client).

29.     Aggregators, including Defendants OpenMarket and ESBI, have in the United

States registered numerous transactions and processed significant amounts of money in

transactions over recent years and have profited greatly from their arrangement with their

industry partners.  As both OpenMarket and ESBI know, many of the transactions they process

are unauthorized premium content charges yet each continues to process such charges unabated,

even in the midst of investigation by government agencies.  Indeed, ESBI is the subject of a

current investigation undertaken by the State of Florida Attorney General's Office for

"cramming of unauthorized charges on consumers landline telephone bills," according to the Florida Attorney General's website.

30.     Defendants' continued conduct in billing telephone subscribers for premium content, combined with their failure to implement a billing system that would ensure only consumers who did, in fact, authorize charges for such services were billed for them, is a deliberate strategy by Defendants to unlawfully collect small sums of money from a large number of consumers. And while it has always been within the power of companies such as Defendants to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed, Defendants have reaped and retained their shares of the improper collections.

## THE FACTS RELATING TO THE NAMED PLAINTIFF GANTCHEV

31.     During the relevant period, new cellular telephone service was purchased by Plaintiff Gantchev from an established wireless carrier or its authorized agent.

32.     In or about 2008, Plaintiff's cell phone account was charged by Defendants OpenMarket and NextWeb for unwanted and unauthorized premium content services associated with Defendant Predicto.

33.     At no time did Plaintiff authorize the purchase of these products and services offered by such Defendants.

34.     At no time did Plaintiff authorize Defendants or anyone else to bill him for these services.

35.     Defendants have yet to provide Plaintiff a full refund of the unauthorized charges consisting of the premium content charges, data charges, taxes, back interest, lost time associated

11

with disputing such charges, and/or a credible assurance that such unauthorized charges would not appear in future billing periods.

## THE FACTS RELATING TO THE NAMED PLAINTIFF RYAN

36.     During the relevant period, Plaintiff Ryan purchased new landline telephone service for her own use from an established landline carrier.

37.     In or about 2009, Ryan's phone account was charged by Defendants ESBI and NextWeb for unwanted and unauthorized premium content services associated with Defendant Email Discounts.

38.     At no time did Plaintiff authorize the purchase of these products and services offered by such Defendants.

39.     At no time did Plaintiff authorize Defendants or anyone else to bill her for these services.

40.     Defendants have yet to provide Plaintiff a full refund of the unauthorized charges consisting of the premium content charges, data charges, taxes, back interest, lost time associated with disputing such charges, and/or a credible assurance that such unauthorized charges would not appear in future billing periods.

## CLASS ALLEGATIONS

41.     Plaintiffs bring this action on behalf of themselves and a Class and two Subclasses, defined as follows:

(a)  A class ("NextWeb Class") consisting of all telephone subscribers in Illinois who suffered losses or damages as a result of billing for services associated with Defendant NextWeb or its affiliates, including without limitation Defendants Predicto and Email Discounts,

12

not authorized by the subscriber; provided, however, that the following are excluded from this Class: (i) the Defendants, and (ii) any employee of Defendants.

(b) A subclass (the "OpenMarket Subclass") consisting of all members of the Class who suffered losses or damages as a result of billing by Defendant OpenMarket for services associated with Defendant NextWeb or its affiliates, including Defendant Predicto, not authorized by the subscriber; provided, however, that the following are excluded from this Class: (i) the Defendants, and (ii) any employee of Defendants.

(c) A subclass (the "ESBI Subclass") consisting of all members of the Class who suffered losses or damages as a result of billing by Defendant ESBI for services associated with Defendant NextWeb or its affiliates, including Defendant Email Discounts, not authorized by the subscriber; provided, however, that the following are excluded from this Class: (i) the Defendants, and (ii) any employee of Defendants.

42.    Plaintiffs' claims are typical of the claims of the other members of the Class and Subclasses in that each was charged for premium content products and services associated with Defendant NextWeb and/or subsidiaries Predicto or Email Discounts that they did not authorize.

43.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclasses. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and Subclasses.

44.    Absent a class action, most members of the Class and Subclasses would find the cost of litigating their claims to be prohibitive, and would have no effective remedy. Class

13

treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the Judiciary and the litigants, and promotes consistency and efficiency of adjudication.

45.     Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class and Subclasses, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the other members of the Class and Subclasses.

46.     The factual and legal bases of Defendants' liability to Plaintiffs and the other members of the Class and Subclasses are the same, resulting in injury to Plaintiffs and to the other members of the Class and Subclasses.  Plaintiffs and the other members of the Class and Subclasses have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

47.     There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class and Subclasses, and those questions predominate over any questions that may affect individual members of the Class and Subclasses.  Common questions for the NextWeb Class include but are not limited to the following:

> (a)     Whether NextWeb's conduct, on its own behalf and through its subsidiaries including Predicto and Email Discounts, described herein amounts to unjust enrichment.

> (b)     Whether NextWeb's conduct, on its own behalf and through its subsidiaries including Predicto and Email Discounts, described herein amounts to tortuous interference with a contract.

14

(c)     Whether NextWeb's conduct, on its own behalf and through its

subsidiaries including Predicto and Email Discounts, described herein

amounts to consumer fraud.

Common questions for the OpenMarket and ESBI Subclasses include but are not limited to the

following:

(a)     Whether the conduct of OpenMarket and ESBI respectively described

herein amounts to unjust enrichment.

(b)     Whether the conduct of OpenMarket and ESBI respectively described

herein amounts to tortious interference with a contract.

(c)     Whether the conduct of OpenMarket and ESBI respectively described

herein amounts to consumer fraud.

### COUNT I
### (Restitution/Unjust Enrichment on behalf of the NextWeb Class)

48.     Plaintiffs incorporate by reference the foregoing allegations.

49.     Plaintiffs and the Class have conferred a benefit upon Defendants NextWeb,

Predicto and Email Discounts in that such Defendants have received and retained money

belonging to Plaintiffs and the other members of the Class resulting from their knowingly having

billed and collected unauthorized third party premium content charges.

50.     Such Defendants appreciate or have knowledge of said benefit.

51.     Under principles of equity and good conscience, such Defendants should not be

permitted to retain the money belonging to Plaintiffs and the other members of the Class, which

such Defendants have unjustly received as a result of their actions.

15

## COUNT II
### (Tortious Interference with a Contract on behalf of the NextWeb Class)

52.     Plaintiffs incorporate by reference the foregoing allegations.

53.     Plaintiffs and the Class had contractual relationships with their telephone carriers whereby they agreed to pay a certain sum of money in exchange for activation of their telephone accounts and their carriers' promise to provide various communication and related services to Plaintiffs and the Class and to bill Plaintiffs and the Class only for products or services the purchase of which they authorized.

54.     Defendants NextWeb, Predicto and Email Discounts knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

55.     Such Defendants intentionally interfered with said contractual relationships through improper motives and/or means by knowingly and/or recklessly continually causing to be placed unauthorized premium content charges on the telephone bills of telephone subscribers throughout the State of Illinois.

56.     Plaintiffs and the other members of the Class suffered loss as a direct result of the conduct of such Defendants.

## COUNT III
### (Violations of the Illinois Consumer Fraud and Deceptive
### Business Practices Act, 815 ILCS 505/1 *et. seq.* on Behalf of the NextWeb Class)

57.     Plaintiffs incorporate by reference the foregoing allegations.

58.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false

16

pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

59.     Defendant NextWeb, by and through its subsidiaries including Defendants Predicto and Email Discounts, violated, and continues to violate this proscription through its conduct alleged above.

60.     NextWeb, through its conduct alleged above, has obtained money from Plaintiffs and the other members of the Class. Plaintiffs and the other members of the Class ask that this Court restore that money to Plaintiffs and enjoin Defendant NextWeb and its subsidiary Defendants from continuing their illegal practices.

61.     Defendant's conduct is ongoing and continues to this date. Plaintiffs, the Class members and the general public are therefore entitled to the relief described herein.

**COUNT IV**
**(Restitution/Unjust Enrichment on behalf of the OpenMarket Subclass)**

62.     Plaintiff Gantchev incorporates by reference the foregoing allegations.

63.     Plaintiff Gantchev and the other members of the OpenMarket Subclass have conferred a benefit Defendant OpenMarket in that OpenMarket has received and retained money belonging to Plaintiff Gantchev and the other members of the OpenMarket Subclass resulting from its billing and collection of unauthorized mobile premium content charges.

64.     Defendant OpenMarket appreciates or has knowledge of said benefit.

65.     Under principles of equity and good conscience, Defendant OpenMarket should not be permitted to retain the money belonging to Plaintiff Gantchev and the other members of the OpenMarket Subclass, which OpenMarket has unjustly received as a result of its actions.

17

## COUNT V
### (Tortious Interference with a Contract on behalf of the OpenMarket Subclass)

66.     Plaintiff Gantchev incorporates by reference the foregoing allegations.

67.     Plaintiff Gantchev and the other members of the OpenMarket Subclass had

contractual relationships with their cellular telephone carriers whereby they agreed to pay a

certain sum of money in exchange for activation of their telephone accounts and their carriers'

promise to provide various communication and related services to Plaintiff Gantchev and the

Subclass and to bill Plaintiff Gantchev and the Subclass only for products or services the

purchase of which they authorized.

68.     Defendant OpenMarket knew of said contractual relationships and intended to and

did induce a breach or disruption of the contractual relationships.

69.     Defendant OpenMarket intentionally interfered with said contractual relationship

through improper motives and/or means by knowingly and/or recklessly continually causing to

be placed unauthorized premium mobile content charges on the telephone bills of telephone

subscribers throughout the State of Illinois.

70.     Plaintiff Gantchev and the other members of the OpenMarket Subclass suffered

loss as a direct result of the conduct of OpenMarket.

## COUNT VI
### (Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq* on Behalf of the OpenMarket Subclass)

71.     Plaintiff Gantchev incorporates by reference the foregoing allegations.

72.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act

("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or

practices, including but not limited to the use or employment of any deception, fraud, false

18

pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

73.     Defendant OpenMarket violated, and continues to violate this proscription through its conduct alleged above.

74.     OpenMarket, through its acts of unfair competition, has obtained money from Plaintiff Gantchev and the other members of the OpenMarket Subclass. Plaintiff Gantchev and the other members of the OpenMarket Subclass ask that this Court restore that money to them and enjoin OpenMarket from continuing its illegal practices.

75.     Such conduct is ongoing and continues to this date. Plaintiff Gantchev, the OpenMarket Subclass members and the general public are therefore entitled to the relief described herein.

### COUNT VII
### (Restitution/Unjust Enrichment on behalf of the ESBI Subclass)

76.     Plaintiff Ryan incorporates by reference the foregoing allegations.

77.     Plaintiff Ryan and the other members of the ESBI Subclass have conferred a benefit upon Defendant ESBI in that ESBI has received and retained money belonging to Plaintiff Ryan and the other members of the ESBI Subclass resulting from its billing and collection of unauthorized landline premium content charges.

78.     Defendant ESBI appreciates or has knowledge of said benefit.

79.     Under principles of equity and good conscience, Defendant ESBI should not be permitted to retain the money belonging to Plaintiff Ryan and the other members of the ESBI Subclass, which ESBI has unjustly received as a result of its actions.

19

## COUNT VIII
### (Tortious Interference with a Contract on behalf of the ESBI Subclass)

80.     Plaintiff Ryan incorporates by reference the foregoing allegations.

81.     Plaintiff Ryan and the other members of the ESBI Subclass had contractual relationships with their landline telephone carriers whereby they agreed to pay a certain sum of money in exchange for activation of their telephone accounts and their carriers' promise to provide various communication and related services to Plaintiff Ryan and the Subclass and to bill Plaintiff Ryan and the Subclass only for products or services the purchase of which they authorized.

82.     Defendant ESBI knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

83.     Defendant ESBI intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing to be placed unauthorized premium landline content charges on the telephone bills of telephone subscribers throughout the State of Illinois.

84.     Plaintiff Ryan and the other members of the ESBI Subclass suffered loss as a direct result of the conduct of ESBI.

## COUNT IX
### ((Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq* on Behalf of the ESBI Subclass)

85.     Plaintiff Ryan incorporates by reference the foregoing allegations.

86.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false

20

pretense, false promise, misrepresentation or the concealment, suppression or omission of such

material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact

been misled, deceived or damaged thereby."

87.     Defendant ESBI violated, and continues to violate this proscription through its

conduct alleged above.

88.     ESBI, through its acts of unfair competition, has obtained money from Plaintiff

Ryan and the other members of the ESBI Subclass. Plaintiff Ryan and the other members of the

ESBI Subclass ask that this Court restore that money to them and enjoin ESBI from continuing

its illegal practices.

89.     Such conduct is ongoing and continues to this date. Plaintiff Ryan, the ESBI

Subclass members and the general public are therefore entitled to the relief described herein.

WHEREFORE, Plaintiffs Kiril Gantchev and Margaret Ryan, on behalf of themselves, a

Class and two Subclasses, pray for the following relief:

    a.    Certify this case as a class action on behalf of the Class and Subclasses as
defined above and appoint Kiril Gantchev and Margaret Ryan as Class
Representatives, and appoint the undersigned as lead counsel;

    b.    Declare that the actions of Defendants, as set out above, constitute unjust
enrichment, and tortuous interference with a contract;

    c.    Enter judgment against Defendants for all economic, monetary, actual,
consequential, and compensatory damages caused by its conduct;

    d.    Award Plaintiffs, the Class and the Subclasses reasonable costs and
attorneys' fees;

    e.    Award Plaintiffs, the Class and Subclasses pre- and post-judgment
interest;

    f.    Enter judgment for injunctive, statutory, and/or declaratory relief as is
necessary to protect the interests of Plaintiffs, the Class and Subclasses;

21

g.    Declare that the actions of Defendants, as set forth above, as well as in other respects, constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on behalf of the Class and Subclasses, respectively; and

h.    Award such other and further relief as equity and justice may require.

### JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: March 6, 2009                        Respectfully submitted,

KIRIL GANTCHEV and MARGARET RYAN, individually and on behalf of a class of similarly situated individuals

By: _____
One of Their Attorneys

Jay Edelson
Myles McGuire
Rafey S. Balabanian
Michael J. Aschenbrener
KamberEdelson LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: 312.589.6370
Facsimile: 312.589.6378
Firm I.D. 44146

22

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KIRIL GANTCHEV and MARGARET RYAN, individually and on behalf of a class of similarly situated individuals,<br><br>     *Plaintiffs*,<br><br>    v.<br><br>PREDICTO MOBILE, LLC, a Delaware limited liability company, NEXTWEB MEDIA, LLC, a Nevada limited liability company, EMAIL DISCOUNTS, LLC, a Nevada limited liability company, OPENMARKET, INC., a Michigan corporation, ENHANCED BILLING SERVICES, INC., a Delaware Corporation,<br><br>     *Defendants*. | Case No. _____ |

## STATE COURT DOCUMENTS

| Page | Date | Description |
|---|---|---|
| B-1 | 8/28/2008 | Chancery Division Cover Sheet |
| B-2 | 8/28/2008 | Class Action Complaint |
| B-17 | 10/15/2008 | Appearance |
| B-18 | 10/15/2008 | Predicto Mobile Routine Agreed Motion for Extension of Time |
| B-21 | 10/20/2008 | Agreed Order for Extension of Time |
| B-22 | 10/21/2008 | Plaintiffs' Notice of Change of Address |
| B-25 | 10/31/2008 | Plaintiffs' Unopposed Motion for Leave to File Corrected Complaint |
| B-43 | 11/6/2008 | Order |
| B-44 | 11/6/2008 | Corrected Class Action Complaint |
| B-61 | 11/17/2008 | Predicto Mobile Answer and Defenses to Corrected Class Action Complaint |
| B-84 | 12/4/2008 | Order |

| B-85 | 12/31/2008 | Plaintiffs' First Set of Interrogatories Directed to Defendant Predicto Mobile |
|------|-----------|---------------------------------------------------------------------------------|
| B-99 | 12/31/2008 | Plaintiffs' First Request to Predicto Mobile for Production of Documents |
| B-113 | 1/8/2009 | Predicto Mobile's Answer and Defenses to the Corrected Class Action Complaint of Karl Gantchev |
| B-138 | 1/12/2009 | Order |
| B-139 | 2/9/2009 | Plaintiffs' Reply to Defendant Predicto's Affirmative Defenses |
| B-154 | 2/19/2009 | Plaintiffs' Motion for Leave to File First Amended Class Action Complaint |
| B-182 | 2/25/2009 | Agreed Routine Motion to Appear Pro Hac Vice on Behalf of Predicto Mobile, LLC |
| B-192 | 2/26/2009 | Order |
| B-193 | 2/27/2009 | Order |
| B-194 | 3/4/2009 | Plaintiffs' Motion for an Extension of Time to Respond to Defendant Predicto's Discovery |
| B-199 | 3/6/2009 | Order |
| B-200 | 3/9/2009 | Amended Class Action Complaint |
| B-225 | 4/2/2009 | Agreed Routine Motion for Extension of Time |

Dated:  April 17, 2009

LYNCH & STERN LLP

Avidan J. Stern, Esq.
150 S. Wacker Drive, Suite 2600
Chicago, IL  60606
Tel: (312) 442-9481
Fax: (312) 896-5883

WILMER CUTLER PICKERING
HALE AND DOOR LLP

Charles Platt (not yet admitted)
Sanket Bulsara (not yet admitted)
399 Park Avenue
New York, New York 10022
Tel.: 212-230-8800
Fax: 212-230-8888

*Attorneys for OpenMarket, Inc.*

(Rev. 12/4/00)  CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT /CHANCERY DIVISION

08CH 31842

Kiril Gantchev
$\phantom{xxxxxxxxxxxxxxxx}$ **Plaintiff**

$\phantom{xxxxxx}$ v.

Predicto Mobile, LLC
$\phantom{xxxxxxxxxxxxxxxx}$ **Defendant**

} Case No. _____

## CHANCERY DIVISION CIVIL COVER SHEET

A Chancery Division Civil Cover Sheet shall be filed with the initial complaint in all actions filed in the Chancery Division.  The information contained herein is for Administrative purposes only and shall not be introduced into evidence.  Please check the box in front of the appropriate category which best characterizes your action being filed.

005 _____ Administrative Review
006 _____ Change of Name
001 ✓ Class Action
002 _____ Declaratory Judgment
004 _____ Injunction
008 _____ Mechanic's Lien
003 _____ Mortgage Foreclosure

007 _____ General Chancery
_____ Accounting
_____ Arbitration Awards
_____ Certiorari
_____ Dissolution of Corporation
_____ Dissolution of Partnership
_____ Equitable Lien
_____ Interpleader
_____ Mandamus
_____ Ne Exeat

_____ Partition
_____ Quiet Title
_____ Quo Warranto
_____ Redemption Rights
_____ Reformation of a Contract
_____ Rescission of a Contract
_____ Specific Performance
_____ Trust Construction
_____ Other _____

By: _____
$\phantom{xxxxxxxxxxxx}$ **Attorney** $\phantom{xxxxxxxxx}$ **Pro Se**

Atty. No.: 44146 _____

Name: Myles McGuire _____

Atty. for: Plaintiff _____

Address: 53 West Jackson Boulevard, Ste. 550 _____

City/State/Zip: Chicago, Illinois 60604 _____

Telephone: (312) 589-6370 _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

B-1

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| KIRIL GANTCHEV, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff,* | ) ) | No. |
| v. | ) ) ) | 08CH31842 |
| PREDICTO MOBILE, LLC, a Delaware limited liability company, | ) ) ) ) | |
| *Defendant.* | ) ) | **Jury Trial Demanded** |

-----------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiff Kiril Gantchev brings this class action complaint against Defendant Predicto

Mobile, LLC seeking to stop Defendant's unlawful practice of charging cellular telephone

customers for products and services the customers have not authorized, a practice which has

resulted in Defendant unlawfully collecting money from consumers throughout the nation and to

obtain redress for all persons injured by such conduct. Plaintiff, for his class action complaint,

alleges as follows upon personal knowledge as to himself and his own acts and experiences, and,

as to all other matters, upon information and belief, including investigation conducted by his

attorneys.

## PARTIES

1.    Plaintiff Kiril Gantchev is a resident of Illinois.

2.    Defendant Predicto Mobile, LLC ("Predicto") is a provider of mobile content in

the United States. Predicto is a Delaware limited liability company headquartered in New

Jersey. Predicto does business throughout the nation including Illinois and this county.

1

**VENUE**

3.     Venue is proper in Cook County because Defendant does business in Cook

County.

**CONDUCT COMPLAINED OF**

4.     This case arises from two closely related phenomena.  The first is the capability of

most cellular telephones, not only to make and receive telephone calls, but also to send and

receive text messages, including—most significantly for present purposes —"premium" text

message services.  These services, also known as "mobile content," include products that range

from the basic (customized ringtones for use with cell phones, sports score reports, weather

alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities

(such as direct payment services, interactive radio, and participatory television).

5.     The second underlying phenomenon of this case constitutes its very core.  That is,

just as providers of premium mobile content, such as Defendant, deliver their products by means

of cell phone technology, they likewise charge and collect from their customers by

"piggybacking" on the cell phone bills sent out by wireless carriers.  Further, because the mobile

content providers by themselves most often lack the wherewithal to negotiate the necessary

relationships with the much larger wireless carriers, they do so with the help of third-party

companies known as aggregators.  These aggregators act as middle-men, representing numerous

mobile content providers in arriving at the agreements that allow them to use the billing and

collection mechanisms of the wireless carriers.  In turn, both the aggregators and the wireless

carriers are compensated for their services by retaining a substantial percentage of the amount

received from each transaction.

2

6.      The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw— understood, perpetuated, and even encouraged by carriers, aggregators, affiliate marketers, and major licensors of copyrighted music such as the instant Defendant—is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established and utilized by companies, including Defendant, in aid of and enriching the premium mobile content industry are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

7.      As Defendant also knows, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendant to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed, Defendant has reaped and retained their shares of the improper collections.

8.      While the total sales of premium mobile content in 2008 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones into mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendant's practices will injure an ever-increasing number of unwitting consumers.

**Predicto's Role in the Scheme to Defraud**

9.      Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider

3

such as Predicto needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

10. Mobile content providers such as Predicto can simply provide that cellular phone number, along with an amount to be charged, to a billing aggregator. The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

11. Because the protections normally present in consumer transactions—such as signatures and private credit card numbers—are absent from this process, the likelihood of false charges increases enormously. And, because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers such as Predicto have powerful financial incentives to collect as many cell phone numbers as possible, but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

12. As it also knows, Predicto routinely processes charges for mobile content that have not been authorized by the charged party.

13. As a result, Predicto has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers. Predicto and third-party service providers have, on information and belief, profited significantly through this practice.

4

14.     Predicto cooperates with numerous other companies in the scheme to fraud, including aggregators, copyright licensors and affiliate marketers, among others.

**Aggregator's Role in the Scheme to Defraud**

15.     In order to tap into the emerging wireless content marketplace and make content services available to wireless consumers, content providers like Predicto must first obtain access to wireless carriers' mobile communications networks and frequently do so by "partnering" with aggregators—intermediary companies that offer content providers (their "content provider partners") direct access to the carriers through existing relationships. This allows content providers to focus on developing and marketing branded content, applications, and programs while aggregators manage the complex carrier relationships, distribution, billing, and customer service.

16.     Aggregators operate mobile transaction networks that help companies develop, deliver, and bill for mobile content services to compatible mobile devices throughout the State of Illinois and the nation.

17.     By using their end-to-end technology platforms, their relationships with U.S. wireless carriers, and other value-added services, these aggregators have forged a crucial link between the wireless carriers and mobile content providers. They have enabled the transformation of wireless technology into a marketing, content delivery, and collections process, while carving out a profitable role for themselves as very critical middlemen in this rapidly growing industry.

18.     Aggregators have developed a vast distribution system that integrates into the wireless networks of some of the largest wireless carriers nationwide, providing direct connections to hundreds of mobile operators.

5

19.     While aggregators charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the wireless carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

20.     The wireless carrier then bills and collects the charge from their current subscriber, retains a portion of the proceeds as their "revenue share," and remits the balance to the aggregator who has direct access to their network and who retains a percentage of the balance in the form of their own "revenue share." The aggregator then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who retains a percentage of the balance in the form of their own "revenue share" and remits the balance to their mobile content provider client).

21.     Aggregators have in the United States registered numerous transactions and processed significant amounts of money in transactions over recent years and have profited greatly from their arrangement with their industry partners.

**Copyright Licensor's Role in the Scheme to Defraud**

22.     Since the advent of customized cellular telephone ringers, the demand for mobile content based on copyrighted music has grown exponentially and today accounts for a significant percentage of all mobile content providers' revenue, including Defendant Predicto. In order to tap into such demand, mobile content providers must first obtain permission from the copyright owners of the music that is to be sold in the form of ringtones.

6

23.     Owners of copyrighted music, such as Universal Music Group, Inc., among many others, have licensed parts of their libraries of copyrighted music to numerous mobile content providers including Defendant Predicto for the latter to sell to consumers in the form of ringtones. This arrangement allows Predicto to focus on developing and marketing content, applications and programs based on the copyrighted music while allowing the copyright owners to remain silent partners operating primarily in the background.

24.     While copyright owners are ordinarily compensated by their content provider partners such as Predicto through upfront fees, their revenue is frequently generated through a "revenue share" or "equity share" based on mobile content transactions involving their copyrighted material: each time a charge is incurred in connection with the purchase of their copyrighted mobile content, the content provider causes that charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

25.     Licensors have, in Illinois and throughout the nation, registered numerous transactions and processed significant amounts of money over recent years, profiting greatly from its arrangements with its industry partners.

26.     Licensors have not only sanctioned illegal billing, it has actively promoted it by negotiating and facilitating partnerships between themselves and mobile-content providers such as Defendant Predicto, and by failing to maintain adequate safeguards to prevent unauthorized charges. Despite their knowledge of such illegal practices and lack of reliable safeguards, Licensors continue to collect revenue for the sale of unauthorized mobile content.

**Affiliate Marketer's Role in the Scheme to Defraud**

7

22.     Affiliate marketers are internet advertising networks that provide a distribution platform for mobile content providers' products and services.

23.     Advertising is an essential step in the mobile content ecosystem. Without the ability to drive users to their websites, mobile content providers such as Predicto would be unable to earn virtually any revenue, no matter how misleading or fraudulent their services. Absent advertising through these so-called affiliate marketers, the fraudulent mobile content providers would have significantly fewer visitors to their websites and their illegal revenues would drop dramatically.

24.     Many affiliate marketers with whom mobile content providers contract, including on information and belief Defendant Predicto, fail to clearly and accurately disclose a host of highly relevant information to consumers about purchasing mobile content, such as the service's price, subscription period and cancellation procedures, among others.

25.     Indeed, many affiliate marketers specifically employ anti-consumer practices simply to achieve the next "sale," including so-called "negative options" which involves the practice of presenting a consumer with an opportunity to consent in advance to continue to receive products or services in the future until cancelled.  In such situations the seller frequently interprets the consumer's silence or failure to take an affirmative action to reject goods or services, or to cancel the sales agreement, as an agreement to continue to receive the offer, when in fact the consumer intends just the opposite. Moreover, one of the mobile content industry's largest affiliate marketers, Epic Advertising, Inc. f/k/a Azoogleads US, Inc. ("Azoogle"), recently settled claims brought against it by the Office of the Attorney General of the State of Florida for deceptively marketing mobile content through a negative option rubric.

8

B-9

26. Predicto knows affiliate marketers are loathe to adequately disclose the relevant information about purchasing mobile content for fear of scaring off potential customers. Fortunately for deceptive affiliate marketers, however, Predicto has systematically declined to require those with whom it contracts to obtain consumers' true advance consent before causing such consumers to be billed.

27. Indeed, if Predicto wanted to end this illegal billing, it could do so in an instant. All it would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the wireless carrier to the account holder and his/her authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

28. But, instead of implementing such a simple safeguard, Defendant has intentionally created, maintained and promoted a system that encourages fraud at every step. Such a system constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

29. Defendant's conduct is by no means accidental. As previously alleged, they know that many of their "customers" dispute claims of consent to be charged for mobile content services. Defendant further knows that they cannot authenticate such customer's authority to be billed for mobile content. In light of its knowledge of these facts, Defendant's decision to continue to charge their customers for mobile content without taking steps to authenticate the representations of customer authentication by other entities constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

9

30.    Because the amount Defendant is taking is small on an individual basis—as little as a few dollars to at most several hundreds of dollars per person—Defendant employs this scheme with the hope and expectation that its illegal conduct will go unpunished.

## THE FACTS RELATING TO THE NAMED PLAINTIFF

31.    In or about 2008, new cell phone service was purchased by Plaintiff from an authorized representative of an established wireless carrier.

32.    On that same day, in exchange for a cellular telephone service plan, Plaintiff agreed to pay his carrier a set monthly fee for a period of approximately 12 months.

33.    In or about 2008, Plaintiff's cell phone account was charged for unwanted and unauthorized mobile content services associated with Predicto.

34.    At no time did Plaintiff authorize the purchase of these products and services offered by Defendant, nor did Plaintiff consent to the receipt of text messages to his cellular telephone.

35.    At no time did Plaintiff authorize Defendant or anyone else to bill him for these services.

36.    Defendant has yet to provide Plaintiff a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back interest and/or a credible assurance that such unauthorized charges would not appear in future billing periods.

## CLASS ALLEGATIONS

37.    Plaintiff brings this action on behalf of himself and a Class and Subclass, defined as follows:

10

(a) a class ("the Class") consisting of all wireless telephone subscribers in the nation who suffered losses or damages as a result of being charged for mobile content products and services associated with Predicto not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendant, and (ii) any employee of Defendant;

(b) a subclass (the "Subclass") consisting of all Illinois resident members of the Class, provided, however, that the following are excluded from this proposed Subclass: (i) the Defendant, and (ii) any employee of Defendant.

38.     Plaintiff's claims are typical of the claims of the other Class and Subclass members in that each was charged for mobile content products and services associated with Predicto that they did not authorize.

39.     Plaintiff will fairly and adequately represent and protect the interests of the other Class and Subclass members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other Class and Subclass members, and have the financial resources to do so. Neither Plaintiff or his counsel have any interest adverse to those of the other Class and Subclass members.

40.     Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitive, and would have no effective remedy. Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the Judiciary and the litigants, and promotes consistency and efficiency of adjudication.

41.    Defendant have acted and failed to act on grounds generally applicable to Plaintiff and the other Class and Subclass members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the other Class and Subclass members.

42.    The factual and legal bases of Defendant's liability to Plaintiff and the other Class and Subclass members are the same, resulting in injury to Plaintiff and to the other Class and Subclass members. Plaintiff and the other Class and Subclass members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

43.    There are many questions of law and fact common to the claims of Plaintiff and the other Class and Subclass members, and those questions predominate over any questions that may affect individual Class and Subclass members. Common questions for the Class include but are not limited to the following:

  (a)    Whether Predicto's conduct described herein is unjust enrichment.

  (b)    Whether Predicto's conduct described herein is tortuous interference with a contract.

Common questions for the Subclass include but are not limited to the following:

  (a)    Whether Predicto's conduct described herein is consumer fraud.

**COUNT I**
**(Restitution/Unjust Enrichment on behalf of the Class)**

44.    Plaintiff incorporates by reference the foregoing allegations.

45.    A benefit has been conferred upon Predicto by Plaintiff and the Class. Predicto has received and retained money belonging to Plaintiff and the Class resulting from its billing and collecting unauthorized third party mobile content charges.

46.    Predicto appreciates or has knowledge of said benefit.

12

47.     Under principles of equity and good conscience, Predicto should not be permitted to retain the money belonging to Plaintiff and the Class, which Predicto has unjustly received as a result of its actions.

## COUNT II
### (Tortious Interference with a Contract on behalf of the Class)

48.     Plaintiff incorporates by reference the foregoing allegations.

49.     Plaintiff and the Class had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts and their carriers' promise to provide various communication and related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products or services the purchase of which they authorized.

50.     Predicto knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

51.     Predicto intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing to be placed on the cellular telephone bills of cellular telephone owners across the nation unauthorized charges.

52.     Plaintiff and the Class suffered loss as a direct result of the conduct of Predicto.

## COUNT III
### (Violations of the Illinois Consumer Fraud and Deceptive
### Business Practices Act on Behalf of the Subclass)

53.     Plaintiff incorporates by reference the foregoing allegations.

54.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or

13

practices, including but not limited to the use or employment of any deception, fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of such

material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact

been misled, deceived or damaged thereby."

55. Predicto violated, and continues to violate this proscription through its conduct

alleged above.

56. Predicto, through its acts of unfair competition, has obtained money from Plaintiff

and members of the Subclass. Plaintiff and the members of the Subclass ask that this Court

restore that money to Plaintiff and enjoin Defendant from continuing their illegal practices.

57. Such conduct is ongoing and continues to this date. Plaintiff, the Subclass

members and the general public are therefore entitled to the relief described herein.

WHEREFORE, Plaintiff Kiril Gantchev, on behalf of himself and the Class and Subclass,

prays for the following relief:

    a.    Certify this case as a class action on behalf of the Class and Subclass as
defined above and appoint Kiril Gantchev Class Representative, and
appoint the undersigned as lead counsel;

    b.    Declare that the actions of Predicto, as set out above, constitute unjust
enrichment, and tortuous interference with a contract;

    c.    Enter judgment against Predicto for all economic, monetary, actual,
consequential, and compensatory damages caused by its conduct;

    d.    Award Plaintiff and the Class and Subclass reasonable costs and attorneys'
fees;

    e.    Award Plaintiff and the Class and Subclass pre- and post-judgment
interest;

    f.    Enter judgment for injunctive, statutory, and/or declaratory relief as is
necessary to protect the interests of Plaintiff and the Class and Subclass;

14

g.   Declare that the actions of Predicto, as set forth above, as well as in other respects, constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on behalf of the Subclass; and

h.   Award such other and further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: August 28, 2008

Respectfully submitted,

KIRIL GANTCHEV, individually and
on behalf of a class of similarly situated individuals

One of his attorneys

Jay Edelson
Myles McGuire
Ryan D. Andrews
KAMBEREDELSON, LLC
53 West Jackson Blvd.
Suite 550
Chicago, Illinois 60604
Telephone: (312) 589-6370
Firm ID:  44146

15

(This form replaces CCM 0009)                    CCG N009-200M-6/5/03(                    )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**CHANCERY DEPARTMENT/FIRST MUNICIPAL**
**DISTRICT**

| | | |
|---|---|---|
| KIRIL GANTCHEV | | No. 08 CH 31892 |
| | Plaintiff(s) | Claimed $: |
| v. | | Return Date: |
| PREDICTO MOBILE, LLC | | Court Date: |
| | Defendant(s) | Room No.: 2405 |

Address of Court District for Filing

## APPEARANCE AND JURY DEMAND*

| | | |
|---|---|---|
| [X] General Appearance | [X] 0900 – Fee Paid | [ ] 0909 – No Fee |
| | [ ] 0904 – Fee Waived | [ ] 0908 – Trial Lawyers Appearance – No Fee |
| [ ] Jury Demand* | [ ] 1900 – Appearance and Jury Demand/Fee Paid | |
| | [ ] 1909 – Appearance and Jury Demand/No Fee Paid | |

The undersigned enters the appearance of:    [ ] Plaintiff    [X] Defendant

PREDICTO MOBILE, LLC
(Insert Litigant's Name)

_____
Signature

| | |
|---|---|
| [X] Initial Counsel of Record | [ ] Pro Se (Self-represented) |
| [ ] Additional Appearance | [ ] Substitute Appearance |
| [X] ATTORNEY NO.: 17044 | [ ] PRO SE: 99500 |

(Please complete the following contact information.)

Name: Michael P. Conway

Atty. for: Defendant

Address: Grippo & Elden LLC, 111 S. Wacker Dr., #5100

City/State/Zip: Chicago, IL 60606

Telephone: 312-704-7700

*Strike demand for trial by jury if not applicable.

> *Important*
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax) or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

_____
Attorney for Defendant

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

KIRIL GANTCHEV,                    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )          No. 08 CH 31842
                                   )
PREDICTO MOBILE, LLC,              )          Hon. James R. Epstein
                                   )
        Defendant.                 )

3303
3172
2871

**NOTICE OF MOTION**

To:    KAMBER EDELSON, LLC
       350 N. LaSalle St., Ste. 1300
       Chicago, Illinois 60654
       Facsimile: (312) 589-6378

        **PLEASE TAKE NOTICE** that on **October 20, 2008**, at **8:45 a.m.,** we shall
appear before the Honorable James R. Epstein in Room 2405 of the Circuit Court of Cook
County, Illinois, County Department, Chancery Division, at the Richard J. Daley Center, 50 East
Washington Street, Chicago, Illinois, and shall then and there present the parties' **AGREED
MOTION FOR EXTENSION OF TIME**, a copy of which is hereby served upon you.

                            Respectfully submitted,

Dated:  October 15, 2008                    PREDICTO MOBILE, LLC

                                      By: _____
                                          One of its Attorneys

Michael P. Conway
Elizabeth S. Elmore
Grippo & Elden, LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
Firm ID: 17044

599564

B-18

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| KIRIL GANTCHEV, | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 CH 31842 |
| v. | ) | |
| | ) | Hon. James R. Epstein |
| PREDICTO MOBILE, LLC, | ) | |
| Defendant. | ) | |

Routine **AGREED MOTION FOR EXTENSION OF TIME**

Defendant, Predicto Mobile, LLC, with the agreement of Plaintiff Kiril Gantchev,

moves to extend the time for Defendant to Answer or otherwise plead until November 2, 2008.

Respectfully submitted,

Dated:  October 15, 2008            PREDICTO MOBILE, LLC

By: _____
One of its Attorneys

Michael P. Conway
Elizabeth S. Elmore
Grippo & Elden, LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
Firm ID. 17044

599572.1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on October 15, 2008, she caused a true

and complete copy of the foregoing **NOTICE OF MOTION** and **AGREED MOTION FOR**

**EXTENSION OF TIME** to be sent U.S. Mail postage prepaid to the following counsel of

record:

KAMBER EDELSON LLC
350 N. LaSalle St., Ste. 1300
Chicago, Illinois 60654
Fax: (312) 589-6378

Elizabeth S. Elmore

151452v1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| KIRIL GANTCHEV, | ) |
| Plaintiff, | ) |
| v. | ) No. 08 CH 31842 |
| PREDICTO MOBILE, LLC, | ) Hon. James R. Epstein |
| Defendant. | ) |

### AGREED ORDER FOR EXTENSION OF TIME

This matter coming before the Court on the parties' Agreed Motion for Extension of Time, the Court being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.   The Motion is GRANTED.

2.   The Defendant shall have until and including November 2, 2008 to Answer or otherwise plead.

IT IS SO ORDERED.

_James R Epstein 1783_

Judge James R. Epstein

Dated: October 20, 2008

**ENTERED**
JUDGE JAMES R. EPSTEIN-1783

OCT 2 0 2008

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Prepared by:
Michael P. Conway
Elizabeth S. Elmore
Grippo & Elden, LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
Firm ID. 17044

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### CHANCERY DIVISION, FIRST DISTRICT

KIRIL GANTCHEV, individually and on behalf )
of a class, )
)
Plaintiff, )
) No. 2008-CH-31842
v. )
)
PREDICTOMOBILE, LLC, )
)
Defendants: )

### NOTICE OF CHANGE OF ADDRESS

To:     GRIPPO ELDEN, 111 S. Wacker Dr., Chicago, Illinois, 60606

        PLEASE TAKE NOTICE that as of October 1, 2008, the law firm of KamberEdelson, LLC moved its Chicago office from 53 West Jackson, Suite 550, Chicago, Illinois to its new location, **350 North LaSalle Street, Suite 1300, Chicago, Illinois, 60654**.  Service of all papers and pleadings should be made, pursuant to all applicable statutes and rules, at the new location address.

                                                    Michael J. Aschenbrener

Michael J. Aschenbrener
KamberEdelson, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois, 60654
(312) 589-6370
attorney no. 44146

        I, Michael J. Aschenbrener, an attorney, certify that on October 21, 2008, I served the above **NOTICE OF CHANGE OF ADDRESS** on the above-described parties at the above addresses by causing true and accurate copies of the same to be placed in the United States Mailbox located at 350 North LaSalle Street, Chicago, Illinois 60654 before 5:00 p.m., proper postage prepaid.

                                                    Michael J. Aschenbrener

FILED - CH
CLERK OF THE CIRCUIT COURT
CHANCERY DIVISION
2008 OCT 31 AM 2:21

DOROTHY BROWN CLERK

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

KIRIL GANTCHEV, individually and )
on behalf of a class of similarly situated )
individuals, )
)
             *Plaintiff,* )    No. 08 CH 31842
)
       v. )
)
PREDICTO MOBILE, LLC, a Delaware limited )
liability company, )
)
             *Defendant.* )    **Jury Trial Demanded**

3303
2871

## NOTICE OF MOTION

    **PLEASE TAKE NOTICE** that on November ___6___, 2008, at __9:30__ a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable James R. Epstein, or any judge sitting in his stead in courtroom 2405, and then and there present *Plaintiff's Unopposed Motion for Leave to File Corrected Class Action Complaint Instanter,* a copy of which is attached hereto and hereby served upon you.

                               **KIRIL GANTCHEV**

                               By: _____
                                   One of Plaintiff's Attorneys

Jay Edelson
Myles McGuire
Rafey S. Balabanian
KamberEdelson LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: 312/589-6370
Facsimile: 312/589-6378
Atty. Code: 44146

B-23

## CERTIFICATE OF SERVICE

I, Rafey S. Balabanian, an attorney, hereby certify that on October 30, 2008, I served the above and foregoing *Plaintiff's Unopposed Motion for Leave to File Corrected Class Action Complaint Instanter*, by causing true and accurate copies of such paper to be placed in postage prepaid envelopes addressed to the persons shown below and by causing such envelopes to be deposited in the United States Mailbox located at 350 North LaSalle Street, Chicago, Illinois, before the hour of 5:00 p.m., on this the 30th day of October, 2008.

Mr. Michael P. Conway
Ms. Elizabeth S. Elmore
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606

Rafey S. Balabanian